YSOLE KROL,

                Petitioner,

     v.

BEATRICE CALHOUN,* Acting Warden, Logan Correctional Center

               Respondent.

No. 16 CV 11595

Judge Manish S. Shah

## MEMORANDUM OPINION AND ORDER

On December 18, 2009, Ysole Krol reached into the glove compartment of her car from the passenger seat and handed a loaded firearm to her boyfriend, Sergio Martinez. Martinez used that gun to shoot Christopher Rivera once in the head, killing him. Krol was convicted in Illinois state court of first-degree murder under an accountability theory and sentenced to 35 years in state custody. She petitions for a writ of habeas corpus under 28 U.S.C. § 2254. As discussed below, Krol's claims are either procedurally defaulted or resolved by the state courts through a reasonable application of federal law, and Krol does not fall within any exception permitting federal habeas review in those circumstances. The petition is denied, but a certificate of appealability shall issue in limited part.

---

* The Clerk shall correct the docket to substitute Calhoun, the Acting Warden of Logan Correctional Center, for former warden Maggie Burke. Fed. R. Civ. P. 25(d).

# I. Legal Standards

Krol challenged her conviction through the state courts but was unsuccessful. Federal review of these state-court decisions is limited. With respect to a state court's determination of an issue on the merits, a federal court may grant habeas relief only if the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2); *Harrington v. Richter*, 562 U.S. 86 (2011). An application of federal law is unreasonable if the state court identifies the correct legal rule but unreasonably applies it to the facts, unreasonably extends the legal rule to a new context, or unreasonably refuses to extend the rule to a new context where it should apply. *Perez-Gonzalez v. Lashbrook*, 904 F.3d 557, 562 (7th Cir. 2018). Federal courts must presume that the facts related by the last state court to pass on the merits are correct, subject to clear and convincing evidence rebutting that presumption. *Coleman v. Hardy*, 690 F.3d 811, 815 (7th Cir. 2012).

A state prisoner must assert her federal claim through "one complete round of state court review," either on direct appeal or through a postconviction proceeding. *McGhee v. Watson*, 900 F.3d 849, 854 (7th Cir. 2018) (quoting *Bolton v. Akpore*, 730 F.3d 685, 694 (7th Cir. 2013)). If a petitioner asserts a claim for relief that she did not present to the state courts, the claim is procedurally defaulted. *Id.*; *Byers v. Basinger*, 610 F.3d 980, 985 (7th Cir. 2010). And if a state court denies a petitioner's claim based on her failure to comply with a state procedural rule, that is an adequate and

independent state ground. In that situation, the claim is procedurally defaulted and a federal court may not review it. *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017).

A petitioner may nevertheless obtain federal review of procedurally defaulted claims if she can show "cause" to excuse the failure and "actual prejudice resulting from the alleged constitutional violation." *Id.* at 2064–65 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)); *Jones v. Calloway*, 842 F.3d 454, 461 (7th Cir. 2016); *Kaczmarek v. Rednour*, 627 F.3d 586, 591 (7th Cir. 2010). To establish cause, the petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Davila*, 137 S. Ct. at 2065 (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). For example, "attorney error is an objective external factor providing cause for excusing a procedural default" if that error "amounted to a deprivation of the constitutional right to counsel." *Id.*

Alternatively, a habeas petitioner may circumvent a procedural bar by showing that the federal court's failure to address her claim would result in a "fundamental miscarriage of justice." *Jones*, 842 F.3d at 461; *Blackmon v. Williams*, 823 F.3d 1088, 1099 (7th Cir. 2016); *Kaczmarek*, 627 F.3d at 591. That exception applies only in the "rare case" in which a petitioner can "prove that [s]he is actually innocent." *Blackmon*, 823 F.3d at 1099 (quoting *McDowell v. Lemke*, 737 F.3d 476, 483 (7th Cir. 2013)). To do so, she must present "new reliable evidence" that was not presented at trial and establish that it is "more likely than not that no reasonable juror would have convicted h[er]" in light of that new evidence. *Jones*, 842 F.3d at 461 (quoting *Schlup v. Delo*, 513 U.S. 298, 324, 327 (1995)).

## II.     Background

State authorities charged petitioner Ysole Krol and her co-defendant Sergio Martinez with two counts of first-degree murder for the death of Christopher Rivera. [1-1] ¶ 4 (*People v. Krol*, 2013 IL App (1st) 1-11-2514 (Exh. A, March 4, 2013 Ord. Affirming Conviction on Direct Appeal)).[1] One count alleged that they "knowingly or intentionally" killed Rivera while armed with a firearm; the other count alleged that they killed him with a firearm "knowing that such act created a strong probability of death or great bodily harm." [1-1] ¶ 4. Krol and Martinez had a joint trial; Krol opted for a bench trial, while Martinez was tried by a jury. [1-1] at 2 n.1.

### A.     The Trial

#### 1.     The Evidence at Trial

On December 18, 2009, petitioner Ysole Krol, her boyfriend, Sergio Martinez, his brother Jose Martinez, and their friend Joshua Bzdusek planned to go to the mall to buy presents. [1-1] ¶ 8. Sergio Martinez was driving Krol's car, Krol was in the passenger seat, and Jose and Bzdusek sat in the back. [1-1] ¶¶ 8, 11. Krol's group had been friends with Christopher Rivera and his brothers, Jonathan Rivera and Isaac Sanchez, but Martinez had had a fight with Rivera and his brothers about a year earlier, and the two groups stopped hanging out. [1-1] ¶¶ 7–8, 11.[2] Rivera and

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings.

[2] To avoid confusion with Sergio Martinez and Christopher Rivera, I refer to Jose Martinez and Jonathan Rivera by their first names.

Martinez had previously had "altercations," and Sanchez also did not have a "good relationship" with Martinez. [1-1] ¶ 5.

No one in the car was talking about Rivera or his brothers. [1-1] ¶¶ 8, 11. While they were driving, Bzdusek saw Rivera's brothers, but not Rivera. [1-1] ¶ 11. Martinez then stopped at a gas station to put air in the tires, and, while there, Jose saw Rivera walking in the direction of his house. [1-1] ¶¶ 8, 11. Bzdusek heard Martinez point Rivera out to Krol and refer to him by what the state court termed a "vulgar insult"; Martinez said, "[t]hat's the mother[]fucker. That's Chris." [1-1] ¶ 13; [31-1] at 166 (Exh. A, Trial Transcript). As Martinez pulled out of the gas station, he called Rivera on the phone and reminded him that he owed Martinez money; Martinez said he wanted to "come get [his] money." [1-1] ¶¶ 5, 7–8, 11, 20. According to Bzdusek, the implication of the call was that Rivera did not have "the guts to come out and fight." [1-1] ¶ 13. Jose and Bzdusek thought Martinez's tone was "firm" but "normal." [1-1] ¶¶ 8, 11. Sanchez, Rivera's brother, overheard the call and thought it sounded like an argument. [1-1] ¶ 5.

After the call at the gas station, Martinez drove to Rivera's house nearby. [1-1] ¶ 9. Rivera told his brothers that Martinez was outside, and the three of them left the house and ran toward Krol's car. [1-1] ¶¶ 5, 7, 9, 12. One of the brothers threw something heavy at the car, and the occupants heard a "thud" [1-1] ¶¶ 9–10, 12. Rivera held up his arm and pointed something that appeared to be a gun at the car. [1-1] ¶¶ 9, 12. The group in the car heard popping noises, although Jose did not hear bullets hitting the car. [1-1] ¶¶ 8, 12–13. Bzdusek and Krol told Martinez to "get the

5

hell out of here," but another car was blocking them in. [1-1] ¶¶ 9, 12. Both Jose and Bzdusek heard Martinez tell Krol to give him a gun, but neither one of them saw her hand it to him; Jose was ducking down, and Bzdusek had closed his eyes. [1-1] ¶¶ 9, 12. Martinez fired one gunshot through the car's open window, and Rivera fell to the ground. [1-1] ¶¶ 6–7, 9, 12. His brothers approached Rivera and saw that he had been shot in the head. [1-1] ¶ 6. Martinez drove away. [1-1] ¶¶ 6–7, 9, 12.

As they drove away, Bzdusek and Jose heard Martinez say he thought Rivera's gun had been fake. [1-1] ¶¶ 9, 13. Jose thought that Krol and Martinez were angry because the car had been damaged. [1-1] ¶ 10. On their way to Krol's house, Krol told Martinez where to drive, then took over driving. [1-1] ¶¶ 12–13. Krol drove to her house and parked the car in her garage. [1-1] ¶¶ 9, 12. Martinez took the gun and left. [1-1] ¶ 12.

Meanwhile, at the scene of the shooting, police officers recovered a wrench, a BB gun, a piece of the handgrip of a BB gun, and a spent shell casing from a 9-millimeter Luger. [1-1] ¶¶ 17–18. Police Officer Richard Novotny received information that the shooter had been driving a black sedan with a license plate beginning with "A." [1-1] ¶ 18. His information led him to the home of Rosa Krol, where he saw a car matching that description in an open garage. [1-1] ¶ 18. Novotny noticed that the car was clean, as if it had been wiped down. [1-1] ¶ 18. Rosa Krol was the owner of the black Mitsubishi Lancer. [1-1] ¶ 19. She consented to a search of the car, and it was towed to the police station. [1-1] ¶ 18.

The day after the shooting, officers interviewed petitioner Krol at the police station. Krol waived her *Miranda* rights and detectives recorded their interview on video. [1-1] ¶ 14. Krol said that Rivera and Sanchez had been sending harassing phone calls and text messages to her and Martinez at all hours of the day. [1-1] ¶ 15. When the group arrived at Rivera's house, she saw three people running after the car and heard popping noises like gunshots and the sound of something hitting the car. [1-1] ¶ 15. Krol had never heard gunshots before. [1-1] ¶ 15. She initially told the detectives that Martinez had the gun on his person, but later admitted that he had asked her to open the glove compartment and hand it to him, so she did. [1-1] ¶ 15. Martinez told Krol that he was only going to "scare" Rivera and his brothers, and Krol did not know the gun was loaded. [1-1] ¶ 15.

After the shooting, Martinez drove a few miles, then suggested Krol drive the rest of the way; they switched seats, and Krol drove the rest of the way to her house. [1-1] ¶ 15. Martinez left with the gun. [1-1] ¶ 15. Either Martinez or someone else suggested cleaning the car, and, according to Krol, she, Jose, and Bzdusek wiped it down. [1-1] ¶ 15.

Police officers saw that the car had a small dent and a small scuff mark between the driver's side window and the rear left window. [1-1] ¶ 18. A forensic scientist tested the steering wheel cover for gunshot reside and concluded that the cover had been in "close proximity" to the discharge of a firearm. [1-1] ¶ 19. He found no trace evidence on the wrench or the BB gun. [1-1] ¶ 19.

A medical examiner conducted an autopsy and determined that Rivera died of a single gunshot wound to the forehead that had been fired from more than three inches away. [1-1] ¶ 16.

### 2.     The Court's Verdict and Sentence

The trial court convicted Krol of both counts of first-degree murder under an accountability theory. [1-1] ¶¶ 3, 23; [31-4] at 152 (Exh. D, Trial Transcript). The judge found that Krol took the gun from the glove compartment and gave it to Martinez, then put the gun back in the glove compartment after the shooting, switched seats with Martinez, drove her car home, and cleaned off the car. [1-1] ¶ 23. She "facilitated [his] escape," the court found, and did not report the crime to the police. [1-1] ¶ 23. Regarding intent, the judge observed that, while there was no evidence of a plan to shoot and kill Rivera, when Krol handed the gun to Martinez, she "knew or should have known" that he "intended to shoot" Rivera, and "that such conduct created a strong possibility of death or great bodily harm." [1-1] ¶ 23. The jury also convicted Martinez of first-degree murder. [1-1] at 2 n.1.

The court sentenced Krol to 35 years in prison, concurrent on both counts. [1-1] ¶ 3. The sentence included a 15-year enhancement for committing the offense while armed with a firearm. [1-1] ¶¶ 3, 24.

## B.     State-Court Review

### 1.     Direct Appeal

Krol appealed her conviction to the Illinois Appellate Court. She raised two claims: first, that the state presented insufficient evidence to sustain her conviction,

8

and second, that the firearm enhancement to her sentence was improper based on lack of notice. [1-1] ¶¶ 3, 25.[3] The court affirmed Krol's conviction. [1-1] ¶¶ 35–36.

As relevant here, the court rejected Krol's legal-sufficiency claim. It noted that Krol handed Martinez the gun he used to kill Rivera, and thus "participated in the crime." [1-1] ¶ 30. And Jose and Bzdusek corroborated Krol's statement in which she admitted she had handed Martinez the gun. [1-1] ¶ 30.

As to Krol's intent, the appellate court found it undisputed that Krol and Martinez felt hostility toward Rivera and his brothers. [1-1] ¶ 30. And it was reasonable to infer that Krol and Martinez were angry with Rivera on the night of the shooting either because Rivera owed Martinez money, or because Rivera and his brothers were attacking the car. [1-1] ¶ 30. The court also pointed out that Martinez and Krol knew that Rivera was only firing a BB gun, based on the popping sounds and lack of bullet strikes. [1-1] ¶ 30. The court also observed that Jose and Bzdusek did not corroborate Krol's assertion that Martinez said he only intended to scare Rivera. [1-1] ¶ 30. Thus, the court determined that a reasonable trier of fact could infer that, under the circumstances, Krol knew that she and Martinez were creating a strong probability of death or great bodily harm when she handed him the weapon. Finally, the court found that Krol's actions after the shooting—namely, driving the car home and washing it—reinforced her "active role in the incident" and corroborated her consciousness of guilt. [1-1] ¶ 30.

---

[3] Krol does not challenge the firearm enhancement in her habeas petition.

The appellate court denied Krol's motion for a rehearing. [1-1] at 15. Her request to appeal to the Illinois Supreme Court was denied. [31-11] (Exh. K, Pet. for Leave to Appeal); [31-12] (Exh. L, Sept. 25, 2013 Ord. Denying Leave to Appeal).

### 2. *Postconviction Petition*

Krol moved for state postconviction review, alleging, as relevant here, that her lawyer committed two errors amounting to ineffective assistance of counsel: (1) resting the defense case before Martinez testified in his own defense, precluding the trial court from considering Martinez's testimony in Krol's case; and (2) failing to move to suppress her statement. [31-13] at 16–22 (Exh. M, Pet. for Postconviction Relief). The trial court summarily denied her petition as frivolous and patently without merit. [1-2] at 10 (Exh. B, trial court's oral denial of postconviction petition). Krol appealed the denial of her ineffective-assistance-of-counsel claims to the appellate court. [1-3] ¶ 1. (*People v. Krol*, 2015 IL App (1st) 1-14-2182 (Exh. C, Dec. 18, 2015 Ord. Affirming Denial of Postconviction Pet.)).

Regarding Krol's claim that counsel erred by not presenting Martinez's testimony, the appellate court found the relevant facts as follows. At trial, after the prosecution rested, Martinez's attorney said that Martinez would testify in his own defense. [1-3] ¶ 12. Krol's attorney said he needed a few minutes to talk to Krol, and, after a pause, told the court that Krol did not want to testify or present any evidence. [1-3] ¶ 12. The court advised Krol of her rights to testify and put on a defense, and Krol confirmed on the record that she did not wish to do either. [1-3] ¶ 12. Krol rested her defense. [1-3] ¶ 12. Martinez then testified that, when he asked Krol to hand him

the gun, she "froze," and they both reached for it. [1-3] ¶ 18. He stated that Krol "probably [s]lightly touched it" before he fired. [1-3] ¶ 18; [31-3] at 125 (Exh. C, Trial Transcript).

In her postconviction petition, Krol argued that her counsel was ineffective for resting before Martinez's testimony, because the testimony supported her defense that she lacked the intent to facilitate killing Rivera. [1-3] ¶ 18. The appellate court found that Krol had forfeited that claim by not raising it on direct appeal. [1-3] ¶ 25. Under Illinois law, a claim is waived on postconviction review if the defendant could have brought it on direct appeal and did not. [1-3] ¶ 25 (citing *People v. Keener*, 275 Ill.App.3d 1, 7 (2d. Dist. 1995)). The court found that the original appellate record was sufficient to support Krol's claim. [1-3] ¶ 25. The court nevertheless briefly addressed the merits, finding that counsel's decision to rest was based on Krol's decision, which she made after consulting with her attorney and the court. [1-3] ¶¶ 26–27.

Krol also argued that her trial attorney deprived her of effective assistance by not moving to suppress her statement to detectives. [1-3] ¶ 15. The appellate court found the following facts. When Krol first arrived at the police station on the day after the shooting, officers informed her of her *Miranda* rights. [1-3] ¶¶ 15–16. Krol gave the officers her attorney's business card and said she did not want to speak with them until her attorney was present. [1-3] ¶¶ 15–16. They ended the interview, but another interview commenced a few hours later. [1-3] ¶¶ 15–16. In her petition, Krol submitted an affidavit stating that she had not reinitiated any contact with the

detectives in the intervening time. [1-3] ¶ 15. A police report attached to the petition stated that Krol "originally invoked her right to counsel, but later changed her mind and wished to speak with Detectives to give her side of the story." [1-3] ¶ 17. In the second interview, which detectives recorded, a detective read Krol her *Miranda* rights; she said she understood them and signed a written *Miranda* waiver. [1-3] ¶ 17.

The state appellate court rejected Krol's claim on the merits. It found that the record rebutted Krol's assertion that she had never reinitiated contact with the police. At the beginning of her videotaped interview, a detective asked Krol to confirm that she had initially asked for her attorney and later changed her mind. [1-3] ¶ 29. Krol agreed that, after handing the officers her lawyer's business card, they stopped interrogating her and moved her to a holding cell. [1-3] ¶ 31. Officer Novotny later brought a phone to the holding cell. Krol confirmed in the interview that, at that point, she said she wanted to speak to police. [1-3] ¶ 29.

The appellate court thus found that Krol's suppression claim had "no arguable basis in law." [1-3] ¶ 29. Further, the court noted that Krol never alleged that her trial counsel knew that she did not reinitiate a conversation with the police, and counsel could not be found ineffective for failing to move based on knowledge that he did not have. [1-3] ¶¶ 30–31.

The Supreme Court of Illinois denied Krol's request to appeal. [31-18] (Exh. R, Pet. for Leave to Appeal); [31-19] (Exh. S, March 30, 2016 Denial of Leave to Appeal).

3.    *Petition for a Successive Postconviction Petition*

Krol then sought leave to file a second postconviction petition in state court to raise the following claims: (1) newly discovered evidence of her actual innocence; (2) ineffective assistance of appellate counsel; and (3) an Eighth Amendment violation. [31-20] at 25–35 (Exh. T, Mot. for Leave to File a Successive Postconviction Petition). The trial court orally denied that motion, and Krol appealed to the intermediate appellate court. [31-21] at 9–10 (Exh. U, March 10, 2017 Oral Denial of Mot.); [31-22] at 5–6 (Exh. V, Brief on Appeal). On appeal, she added a claim that her trial counsel had been ineffective for failing to investigate and present evidence of Rivera's propensity for violence.

Krol attached two affidavits to her petition that she argued constituted new evidence of her innocence. [31-25] ¶ 26 (Exh. Y, April 6, 2018 Ord. Denying Leave to Appeal). In one, Hugo Mandujano stated that, on the day of the shooting, he had seen four men come out of an apartment building and run toward a black car. [31-25] ¶ 27. The men were shouting "go get them," and "shot [*sic*] it." [31-25] ¶ 27. One of the men threw a brick at the car, and another held a gun. [31-25] ¶ 27. Mandujano heard "pops," then a louder pop. [31-25] ¶ 27. He saw someone fall to the ground. [31-25] ¶ 27. In the second affidavit, Martinez said that he had knowledge of Rivera acting violently in the past. Further, Martinez knew that Rivera had prior convictions for violent crimes. [31-25] ¶ 28.

The appellate court denied Krol's motion to file a second postconviction petition. [31-25] ¶ 1. In Illinois, a petitioner may only obtain leave to file a successive postconviction petition if she can show a colorable claim of actual innocence or cause

and prejudice. [31-25] ¶ 31. The court rejected Krol's argument that the affidavits amounted to a claim of actual innocence because Mandujano's testimony was "cumulative" to the evidence at trial and "d[id] not add anything to what the court already heard." [31-25] ¶¶ 35–36. Martinez's theory of self-defense was already before the court. [31-25] ¶ 37. Likewise, the court found that Martinez's affidavit "did not conclusively exonerate" Krol, because the trial court had already heard evidence that Rivera was the initial aggressor and "necessarily rejected a self-defense theory when it found [Krol] guilty." [31-25] ¶ 38.

The appellate court also rejected Krol's claim of ineffective assistance of appellate counsel as cause for defaulting the ineffective-assistance-of-trial-counsel claim, because the underlying claim had no "arguable basis." [31-25] ¶ 42. It found that Krol had not successfully established cause or prejudice. [31-25] ¶¶ 44-50. The court also concluded that Krol had forfeited her claim that counsel was ineffective for failing to investigate Rivera's propensity for violence, because she had not raised it in her original motion for leave to file a second postconviction petition. She only added it on appeal. [31-25] ¶ 52.

Finally, the court rejected Krol's claim that she could show cause and prejudice for failing to argue in her initial postconviction petition that her sentence violated the Eighth Amendment under *Miller v. Alabama*, 567 U.S. 460 (2012) and *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016), which make it unconstitutional to sentence a juvenile to mandatory life without parole. Krol was 19 at the time of the shooting. [31-25] ¶ 59. The court assumed that Krol had shown cause because, when Krol filed

her initial postconviction petition, the Supreme Court had not decided *Montgomery*, which made *Miller* retroactive. [31-25] ¶ 57. But it found that Krol had failed to establish prejudice, because she received a 35-year sentence, not a life sentence or de facto life sentence. [31-25] ¶¶ 58–59. Further, the sentencing court had not imposed an automatic sentence, but had considered mitigating factors. [31-25] ¶ 60.

## III.   Analysis

Krol now appears to raise seven claims in her federal habeas petition. First, she argues that the state court on direct appeal unreasonably applied *Jackson v. Virginia*, 443 U.S. 307 (1979), when it found the evidence of her guilt legally sufficient. She renews the two claims of ineffective assistance of counsel she brought in her state postconviction petition (failure to file a pretrial suppression motion and present Martinez's testimony as part of her defense at trial), and adds two ineffective-assistance claims that she brought while trying to obtain leave to file a second postconviction petition (ineffectiveness of appellate counsel and failure to present Rivera's propensity for violence). She adds one entirely new ineffectiveness claim, arguing that trial counsel's cumulative errors amounted to constitutionally inadequate representation. Finally, she argues that her sentence violates the Eighth Amendment under *Miller*.

### A.   Sufficiency of the Evidence

On direct appeal, Krol argued that the state failed to present legally sufficient evidence of her guilt. The state court rejected that claim and affirmed her conviction, and the Illinois Supreme Court denied leave to appeal. Krol now argues that the state

15

appellate court unreasonably applied *Jackson* in evaluating her legal-sufficiency claim. She argues that the testimony that she actually handed Martinez the gun was "inconclusive at best," [1] at 12–13, and the state failed to prove that she had the requisite intent to facilitate harm to Rivera.

The Due Process Clause of the Fourteenth Amendment requires the state to present sufficient evidence of each element of a charged crime as defined by state law. *Maier v. Smith*, 912 F.3d 1064, 1074 (7th Cir.) (citing *Jackson*, 443 U.S. at 326), *reh'g denied* (Feb. 14, 2019). "[T]wo levels of judicial deference" govern courts' review of legal-sufficiency claims in federal habeas proceedings. *Saxon v. Lashbrook*, 873 F.3d 982, 988 (7th Cir. 2017). First, the state appellate court must affirm the conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 987–88 (quoting *Jackson*, 443 U.S. at 319). Second, a federal court may overturn the appellate court's legal-sufficiency finding only if the state court's determination was "objectively unreasonable." *Id.* at 988.

In Illinois, a person commits first-degree murder if she "kills an individual without lawful justification" and either "intends to kill or do great bodily harm to that individual," "knows that such acts will cause death to that individual," or "knows that such acts create a strong probability of death or great bodily harm to that individual." 720 ILCS 5/9-1(a). A person is legally accountable for the conduct of another when, either before or during the commission of the offense, with the "intent to promote or facilitate that commission," she solicits, aids, abets, agrees, or attempts to aid the

other person in the planning or commission of the offense. 720 ILCS 5/5-2(c). To prove an intent to promote or facilitate, the state can either present evidence that "(1) the defendant shared the criminal intent of the principal or (2) there was a common criminal design." *People v. Fernandez*, 2014 IL 115527, ¶ 13 (2014); *People v. Pollock*, 202 Ill.2d 189, 213 (Ill. 2002); *People v. Williams*, 193 Ill.2d 306, 338 (Ill. 2000). The state appellate court here relied on the first option, that Krol knew that she and Martinez were creating a strong probability of death or great bodily harm.

The state appellate court correctly identified the standard from *Jackson v. Virginia.* Viewing the evidence in the light most favorable to the prosecution, it reasonably found that the state proved that Krol handed Martinez the murder weapon. Most damning for Krol, she admitted in her custodial statement that she did so. And while Jose and Bzdusek did not see the actual hand-off, they heard Martinez ask Krol to hand him the gun, corroborating Krol's statement that she passed Martinez the gun in response to his request. The evidence was sufficient to find that Krol knowingly handed Martinez the gun, and that reasonably supports the conclusion that Krol aided Martinez in the commission of the offense.

Her intent to cause great bodily harm is a closer call, but the evidence reasonably supported that determination. The circumstances in which Krol handed over the gun supported the inference that Krol knew doing so would create a strong probability of death or great bodily harm. Martinez and Rivera had a history of altercations. Krol knew about harassing text messages sent by Rivera and his brothers. And, just a few minutes before the shooting, Martinez pointed Rivera out to

Krol and referenced him with a demeaning insult. Then, he called Rivera and taunted him about not having the guts to fight. The group abandoned their plan to go shopping and approached Rivera's house instead. A rational trier of fact could find that Krol knew Martinez intended Rivera harm. Once outside the house, Rivera and his brothers ran at Krol's car with a gun in hand and threw something heavy at the car. At that point, when Martinez asked Krol for the gun from the glove compartment, Krol knew that Martinez asked for a gun because he intended to shoot it—or so a fact-finder could reasonably conclude. And as the state appellate court noted, Krol's actions following the shooting corroborated her consciousness of guilt—namely, driving the car and washing it down to cover up its role in the shooting.

The evidence was far from overwhelming and the trial could have come out the other way. No one testified that Martinez voiced any intent to kill Rivera before the incident, and other than from her receipt of harassing messages, there was no evidence to suggest that Krol harbored any significant animus toward the victim. Krol had little time to make her choice. The state appellate court acknowledged as much in its opinion. It wrote: "Sometimes choices made in the blink of an eye, under stressful circumstances, are better than those made after due and careful consideration and study. Sometimes, when they are not, they result in tragic consequences. The instinctual choices Krol made that night produced a deadly result." [1-1] ¶ 1. Although one could find that an instinctual reaction was unintentional, it was not unreasonable to view Krol's choice here as an intentional one, particularly when the choice was to hand over a lethal weapon.

There are weaknesses in the state court's analysis. It wrote that Krol felt hostility toward Rivera. But the only evidence to that effect was Krol's statement that Rivera and his brother had been sending her harassing text messages and Jose's statement that Krol and Martinez were angry that the car had been damaged. It is a stretch to go from that hostility to intent to kill or cause great bodily harm on Krol's part. There was no evidence that Krol intended to approach the Rivera brothers that night. Rather, the group had planned to go to the mall. Their plans were derailed when Martinez saw Rivera, then called to taunt him about owing Martinez money. It was Martinez who noticed Rivera and pointed him out to Krol, Martinez who referred to him with an insult, Martinez who called Rivera to challenge him about a debt owed, and Martinez who drove the car to Rivera's house. While there was ample evidence that Martinez was angry with Rivera, there was little establishing that Krol felt the same way. The appellate court suggested that Krol's intent could be inferred from her knowledge that only a BB gun was being discharged due to the popping sounds and lack of bullet strikes. But little evidence supported the appellate court's suggestion that Krol could distinguish between BB gunshots and gunshots from a firearm. Jose testified that he thought it might have been a BB gun, since no bullets were hitting the car, and Martinez apparently realized that as well, since he commented that Rivera's gun may have been fake as he drove away. And while Krol told the police that someone in the car may have commented that the gunshots were fake, she had never heard gunshots before so assessing her ability to distinguish between shots from a BB gun and a firearm was speculative.

The state court also overlooked certain facts negating an inference of intent. For instance, as soon as Rivera and his brothers began attacking the car, Krol told Martinez to "get the hell out of [t]here," a statement that Bzdusek corroborated. That Krol's instinct was to leave weakens the appellate court's conclusion that Krol harbored anger or hostility toward Rivera leading up to the shooting. And if, as Bzdusek originally told the police, Krol handed Martinez the gun before the heavy object hit the car—meaning Martinez held onto it for a moment before firing—Krol may have handed Martinez the gun before he had the intent to shoot it.[4] Finally, the court dismissed as uncorroborated Krol's statement in her recorded interview that she thought Martinez only intended to scare the Rivera brothers, although it had no qualms about crediting Jose's uncorroborated statement that Krol was angry about car damage.

Further, while Krol's actions following the shooting could corroborate consciousness of guilt, they are not compelling on that score—after-the-fact concealment could also be probative of a teenager's mere loyalty and concern for (or fear of) Martinez, not of Krol's intent when she handed him the gun.

---

[4] In his statement to the police, Bzdusek said that Martinez asked for the gun, and Krol gave it to him. Then, after a heavy object hit the car, Martinez yelled, "what the fuck," "slammed on his br[ake]s," and "reached into his lap, picked up the gun," and fired one time. [31-25] ¶ 10 (Exh. Y, Ord. April 6, 2018, Ord. Denying Leave to Appeal). That sequence of events suggests that after requesting the gun, Martinez held onto it and began to drive away, but changed his mind after the object hit the car. In other words, there was some evidence to suggest that, at the time that Krol handed Martinez the gun, he did not intend to shoot it. But on the other hand, Martinez's decision to arm himself with Krol's assistance was itself indicative of an intent to use the gun, whether or not he immediately fired.

A state court's decision is objectively unreasonable only if it falls "well outside the boundaries of permissible differences of opinion." *Morgan v. Hardy*, 662 F.3d 790, 797 (7th Cir. 2011) (quoting *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009)). On balance, the state's evidence of intent was flimsy, but a court could find it sufficient. The state court identified and applied the right standard under *Jackson*. It concluded that, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that Krol knew that handing Martinez a gun under the circumstances created a strong probability of death or great bodily harm. That finding was not unassailable, but it was also not objectively unreasonable. Krol was aware of sufficient facts to understand that Martinez and Rivera were in conflict, knew that the dispute had become violent when her car was attacked, and admitted to handing a gun to Martinez. A court could reasonably conclude that a fact-finder could find beyond a reasonable doubt that Krol knew there was a strong probability of causing great bodily harm. Krol's petition on legal-sufficiency grounds is denied.

## B. Ineffective Assistance of Counsel

### 1. *Failure to File a Suppression Motion*

Krol argues that her trial counsel deprived her of constitutionally effective representation by failing to move to suppress her custodial statement. She initially invoked her right to counsel, but, she contends, officers reapproached her a few hours later and reinitiated the interview, in violation of *Edwards v. Arizona*, 451 U.S. 477 (1981). She asserts that counsel's decision not to file a motion was deficient

performance, which prejudiced her because her confession was the state's only evidence that she intentionally handed Martinez the murder weapon.

Krol presented this claim to the state courts using the correct procedural avenues, so it is not unexhausted or procedurally barred. On the merits, Krol is entitled to habeas relief only if she can establish that the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). Krol appears to rely on both 28 U.S.C. § 2254(d)(1) and (2); she argues that the state appellate court both "unreasonably determined the facts" and "misapplied Supreme Court law." [1] at 27.

I begin with § 2254(d)(2). A state-court decision involves an "unreasonable determination of the facts" in light of the evidence in the state-court proceeding if it "rests upon fact-finding that ignores the clear and convincing weight of the evidence." *Perez-Gonzalez*, 904 F.3d at 562 (quoting *Newman v. Harrington*, 726 F.3d 921, 928 (7th Cir. 2013)). Habeas relief may be granted "only when the state court makes an 'unreasonable error.'" *Coleman*, 690 F.3d at 815 (quoting *Morgan*, 662 F.3d at 798). Federal courts presume that a state court's account of the facts is correct. *Id.*; *Virsnieks v. Smith*, 521 F.3d 707, 713 (7th Cir. 2008). The petitioner bears the burden of "rebutting the presumption of correctness by clear and convincing evidence." *Coleman*, 690 F.3d at 815 (quoting 28 U.S.C. § 2254(e)(1)).

Krol asserts that the state appellate court made a factual error by finding that she reinitiated contact with the police. She attached an affidavit to her postconviction petition stating that she did not initiate contact after invoking her right to counsel. She argues the appellate court overlooked her affidavit and ignored the lack of evidence about what transpired between Krol and Officer Novotny when he brought a cell phone to her holding cell, an interaction that prompted the officers to begin a new interview.

The appellate court mentioned Krol's affidavit in recounting the facts and quoted from it. [1-3] ¶ 15. The court was aware of Krol's assertion. Rather than overlooking the affidavit, the court instead credited Krol's own words. That is, in Krol's recorded interview, she confirmed that the police had stopped interviewing her after she asked for her attorney. She likewise confirmed on video that she had volunteered to talk to the police when Officer Novotny brought a phone to her holding cell. And one of the police reports that Krol attached to her postconviction petition stated that she had originally invoked her right to counsel but later changed her mind, corroborating her recorded statement. In light of the corroborating evidence and Krol's own statement, the state court's factual determination that Krol reinitiated contact was consistent with the weight of the evidence. The state court did not make an unreasonable factual error.

Turning to § 2254(d)(1), a federal court reviewing a state court's ineffective-assistance-of-counsel ruling considers whether the state court's application of the standard under *Strickland v. Washington*, 466 U.S. 668 (1984), was "unreasonable."

*Winfield v. Dorethy*, 871 F.3d 555, 560 (7th Cir. 2017) (quoting *Richter*, 562 U.S. at 101), *cert. denied*, 138 S. Ct. 2003 (2018). A defendant is deprived of constitutionally adequate representation if her counsel's alleged errors were "outside the wide range of professionally competent assistance," and if there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Harper v. Brown*, 865 F.3d 857, 860–61 (7th Cir. 2017) (quoting *Strickland*, 466 U.S. at 690, 694). The *Strickland* analysis presumes that "counsel's conduct falls within the wide range of reasonable professional assistance." *Lee v. Avila*, 871 F.3d 565, 570–71 (7th Cir. 2017) (quoting *Strickland*, 466 U.S. at 688–89). The *Strickland* standard is "highly deferential," and review of claims under § 2254(d) is "likewise highly deferential," so federal court review of an ineffectiveness claim in a habeas petition is "doubly deferential." *Id.* (quoting *Hinesley v. Knight*, 837 F.3d 721, 732 (7th Cir. 2016)); *Winfield*, 871 F.3d at 560.

When a defendant invokes her right to counsel, the police must stop interrogating her until her attorney is present, unless she "initiates further communication, exchanges, or conversations with the police." *United States v. Robinson*, 586 F.3d 540, 545 (7th Cir. 2009) (quoting *Edwards*, 451 U.S. at 484–85). A suspect initiates conversation if she makes a statement that "evince[s] a willingness and a desire for a general discussion about the investigation." *Id.* (quoting *Oregon v. Bradshaw*, 462 U.S. 1039, 1046 (1983)). And, the suspect must knowingly and voluntarily waive her right to counsel after reinitiating. *Id.*

Here, the state court reasonably applied *Strickland*. The court cited and described the correct *Strickland* standard in a different section of the opinion. [1-3] ¶ 25 ("[T]o prove a claim of ineffective assistance of counsel, the defendant must show that her counsel's allegedly deficient performance prejudiced her."). Regarding this claim, the court rejected Krol's argument because a suppression motion would have had "no arguable basis in law," given that Krol reinitiated contact with the police, said that she understood her *Miranda* rights, and signed a written *Miranda* waiver.

While the court did not use the *Strickland* buzzwords of performance and prejudice, its opinion applied the correct analysis. By determining that a suppression motion would have been meritless, the state court necessarily held that counsel could not have rendered deficient performance by not bringing that motion. "The Sixth Amendment does not require counsel … to press meritless arguments before a court." *Lilly v. Gilmore*, 988 F.2d 783, 786 (7th Cir. 1993). For the same reasons, by finding the suppression claim itself unavailing, the court implied that forgoing it could not have prejudiced Krol. Notably too, the court cited a number of cases in its analysis that correctly expound on the *Strickland* standard, confirming that the court in this case was applying the *Strickland* test, even if it did not explicitly say so. [1-3] ¶ 29 (citing *People v. Hodges*, 234 Ill.2d 1, 2 (Ill. 2009) and *People v. Romero*, 2015 IL App (1st) 140205); [1-3] ¶ 30 (citing *People v. McKinney*, 2011 IL App (1st) 100317, ¶ 47). Also, the court observed that Krol never alleged that trial counsel knew she had not reinitiated conversation with the officers, and noted that counsel could not have been ineffective for failing to act on information he did not have. Put another way, it was

25

reasonable not to file a motion if counsel did not know the critical information that would underly the motion. Applying the doubly deferential standard, the state court reasonably applied *Strickland* to the facts, and Krol's petition on this ground is denied.

### 2. *Procedurally Defaulted Claims*

The remainder of Krol's ineffective-assistance-of-counsel claims are procedurally defaulted. Specifically, she alleges that her trial counsel committed two errors: (1) failing to present Martinez's testimony in her defense; and (2) failing to investigate and present evidence of Rivera's propensity for violence. She also asserts that she was deprived of effective appellate counsel because her attorney did not raise ineffectiveness of trial counsel on direct appeal.[5] Finally, she argues that the aggregate effect of these errors deprived her of a fair trial. Krol advanced most of these claims at various points in the state court, and the state courts found that she had forfeited them. The state courts' findings of waiver are adequate and independent state grounds that bar federal court review.

As noted above, "a federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule." *Davila*, 137 S. Ct. at 2064. When a state court "refuses to reach the merits of a petitioner's federal claims"

---

[5] Krol brings both a stand-alone claim of ineffective assistance of appellate counsel, and also argues that ineffective assistance of appellate counsel was "cause" to excuse her procedural default of her ineffective-assistance-of-trial-counsel claim.

because the petitioner did not raise the claims "in accord with the state's procedural rules," the decision rests on an adequate and independent state procedural ground. *Richardson v. Lemke*, 745 F.3d 258, 268–69 (7th Cir. 2014) (quoting *Kaczmarek*, 627 F.3d at 591).

In Illinois, a defendant must bring claims evident from the face of the appellate record on direct review or forfeit them. *People v. Hampton*, 165 Ill.2d 472, 478 (Ill. 1995) ("Issues that could have been presented on direct appeal, but were not, are considered waived."); *see also Crutchfield v. Dennison*, 910 F.3d 968, 976 (7th Cir. 2018) (noting that, in Illinois, "[i]f the claim relies solely on the existing record, it *must* be brought on direct appeal."). Likewise, a defendant waives any postconviction claim not raised in the original postconviction petition. *Woods v. Schwartz*, 589 F.3d 368, 376 (7th Cir. 2009) (citing 725 ILCS 5/122-3 (2008)); *see also Sturgeon v. Chandler*, 552 F.3d 604, 611 (7th Cir. 2009) ("A finding of waiver by the state postconviction court is enough to establish an adequate and independent state ground.").

Here, Krol brought her ineffective-assistance claim regarding trial counsel's failure to present Martinez's testimony in her first postconviction petition. The state court found that Krol could have brought that claim on direct appeal because it was evident from the record. Since she did not, she waived it. Federal review is precluded. *See Smith v. Gaetz*, 565 F.3d 346, 351–52 (7th Cir. 2009).

In Krol's petition for leave to file a second postconviction motion, she argued— for the first time—that appellate counsel erred in failing to argue on direct appeal

that trial counsel was ineffective for failing to present Martinez's testimony at trial. In appealing the state trial court's denial of her petition, she added a claim of ineffectiveness based on trial counsel's failure to investigate and present evidence of Rivera's propensity for violence. The state appellate court found that Krol had waived both of those claims, either by not bringing them in her first postconviction petition or, in the case of the propensity claim, by not presenting it to the trial court in her motion. The court's waiver determination is an adequate and independent state procedural ground.

Finally, Krol argues that she is entitled to habeas relief because, even if her attorney's alleged errors were not sufficiently serious standing alone, the aggregate effect of the errors prejudiced her defense. As the state correctly observes, Krol never presented a claim of cumulative error to any state court, so the claim is unreviewable here. *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007) (finding claim defaulted where petitioner did not present it to the state courts).

### 3. *Cause and Prejudice*

In reply, Krol argues that she can demonstrate cause and prejudice for procedurally defaulting her ineffective-assistance-of-trial-counsel claims regarding counsel's failure to present Martinez's testimony and evidence of Rivera's propensity for violence. She relies on ineffective assistance of appellate counsel as cause for both claims. For prejudice, she argues that either strain of evidence would have exculpated her.

At the outset, Krol waived her cause-and-prejudice argument by not bringing it in her original federal habeas petition. "Arguments raised for the first time in a reply brief are waived." *Gonzales v. Mize*, 565 F.3d 373, 382 (7th Cir. 2009) (quoting *Simpson v. Office of the Chief Judge of Will Cty.*, 559 F.3d 706, 719 (7th Cir. 2009)) (habeas petitioner's argument brought for the first time on reply was waived); *Amerson v. Farrey*, 492 F.3d 848, 852 (7th Cir. 2007) (same); *Aliwoli v. Gilmore*, 127 F.3d 632, 634–35 (7th Cir. 1997) (finding that habeas petitioner waived his cause-and-prejudice argument by raising it for the first time in reply).

Even if I could consider cause and prejudice, I would not find Krol's procedural default excused. Beginning with cause, Krol argues that appellate counsel was ineffective for failing to raise ineffectiveness of trial counsel on direct appeal. She notes that the same attorney represented her at trial and on direct appeal, and would not have brought a claim acknowledging his own ineffectiveness.

Ineffective assistance of appellate counsel can constitute cause for a procedural default. *Smith v. McKee*, 598 F.3d 374, 383 (7th Cir. 2010). Effective appellate counsel is not expected to raise "every nonfrivolous argument on appeal," but rather, "only those arguments most likely to succeed." *Davila*, 137 S. Ct. at 2067. Declining to raise a claim on appeal "is not deficient performance unless that claim was plainly stronger than those actually presented to the appellate court." *Id.*; *see Gaetz*, 565 F.3d at 352 (petitioner could prevail on ineffective-assistance-of-appellate-counsel claim as cause for procedural default only if he established that his appellate counsel failed to raise an issue that was "both obvious and clearly stronger than the issues he did raise").

Krol's claims of ineffective assistance of trial counsel are neither obvious nor stronger than the issues that counsel chose to pursue on direct appeal. Counsel raised a legal-sufficiency claim and challenged the firearm enhancement to Krol's sentence. For the reasons noted above, the legal-sufficiency claim was a strong one; the evidence of Krol's intent was close. In contrast, there is little chance that Krol would have successfully established ineffective assistance of counsel. Trial counsel's decision to rest before Martinez's testimony was not beyond the scope of professional competency. Krol told counsel, and then the court, that she wished to rest her case without presenting witnesses. Based on that representation from his client, it was reasonable for counsel to assume that Krol did not expect Martinez's testimony to be helpful to her, and it was not deficient performance to follow Krol's wishes. And as a matter of trial strategy, it was understandable that counsel might prefer to exclude Martinez's testimony. Martinez was arguing self-defense, so counsel likely assumed that Martinez would testify that he intentionally asked for the gun to protect himself and others. Counsel could reasonably fear that Martinez's testimony might increase the evidence of Krol's participation. Without the testimony, Krol had a chance of arguing that she didn't participate in the crime or lacked the requisite intent.

Nor would appellate counsel have succeeded in establishing that, had Martinez's testimony been included, Krol would have been acquitted. Although Martinez testified that Krol "froze" before reaching for the gun, he also admitted that she "probably [s]lightly touched it." [1-3] ¶ 18; [31-3] at 125 [Exh. C, Trial Transcript). Those admissions were not exculpatory; rather, they corroborated Krol's own

statement that she handed Martinez the gun. And even if Martinez's statement could be considered to conflict with Krol's, there is no reason to think the trial court would have credited Martinez's trial testimony over Krol's own admission that she handed him the gun. Nor would Martinez's statements have negated Krol's actions in driving the car home, wiping it down, and failing to report the shooting. Thus, there is not a reasonable probability that the trial court would have changed its verdict if it could have considered Martinez's testimony.

Likewise, Krol's claim that trial counsel failed to present evidence of Rivera's violent past was not "plainly stronger" than the claims counsel raised on direct appeal. The trial court already knew that Rivera had a history of "altercations" with Martinez, that he rallied his brothers when Martinez arrived outside the house, and that he ran at the car while shooting a BB gun. The testimony already established that Rivera tended to react violently, and any further evidence to that effect would have been cumulative. Since the claim was not plainly stronger than the legal-sufficiency and sentencing claims that appellate counsel chose to raise on direct appeal, appellate counsel was not ineffective for refraining from bringing it.

Because appellate counsel rendered effective assistance, Krol fails to meet the cause threshold under the cause-and-prejudice standard. Nor is Krol prejudiced by the inability to obtain federal review on the merits of her ineffective-assistance-of-trial-counsel claims. For the reasons just discussed, neither of those claims would have gained traction.

Finally, Krol suggests in reply that she can show cause and prejudice for defaulting her stand-alone claim of ineffective assistance of appellate counsel, because the same attorney represented her on direct appeal and in her first state postconviction petition. [36] at 15. But "because there is no Sixth Amendment right to counsel on collateral review," ineffective assistance of postconviction counsel "is not cause to excuse a procedural default." *Crutchfield*, 910 F.3d at 973; *see also McGhee v. Watson*, 900 F.3d 849, 854 (7th Cir. 2018).

### 4. *Actual Innocence Gateway*

Krol does not bring an actual-innocence claim to circumvent any of her procedural defaults, but she nevertheless alludes to new evidence of her innocence. Specifically, she attaches the two affidavits to her habeas petition that she presented to the state court in her motion for leave to file a successive postconviction motion.

Neither of the affidavits make a "convincing showing of actual innocence." *Jones*, 842 F.3d at 461. The affidavit of the eyewitness, Mandujano, offers no new information. Two witnesses testified at trial that Rivera and his brothers ran at the car while Rivera brandished what appeared to be a gun and one of the brothers threw a heavy object at the car. That testimony was corroborated by Krol's custodial statement, as well as the physical evidence—police found a BB gun and a wrench at the scene of the shooting and observed a small dent in the back of Krol's car.

Likewise, the trial judge (the fact-finder in Krol's case) already knew that Rivera had a history of altercations with Martinez. Likewise, she knew that Rivera responded to Martinez's phone call by rallying his brothers, grabbing a BB gun, and

running at Krol's car while shooting the BB gun. Rivera's tendency toward violence was already in evidence based on his actions on the day of the shooting. The trial judge nevertheless found Krol guilty, rejecting Martinez's claim of self-defense. Any further information about Rivera's violent past would not have changed the outcome. Because it is not more likely than not that no fact-finder could have found Krol guilty beyond a reasonable doubt based on the new evidence, Krol does not meet the high threshold of actual innocence to excuse a procedural default.

### C.     Eighth Amendment

Krol argues that her 35-year sentence violates the Eighth Amendment prohibition against cruel and unusual punishment under *Miller v. Alabama*, which held that mandatory life without parole for a juvenile offender is unconstitutional. 567 U.S. at 489. *Montgomery v. Louisiana* made *Miller* retroactive in 2016. 136 S. Ct. at 737. The state correctly points out that Krol defaulted this claim because she did not present it to the state courts until her motion for leave to file a second postconviction petition. The state appellate court denied Krol leave to bring that claim in a second petition. The claim is procedurally barred and unreviewable in federal court.

Krol again argues in reply that she can establish cause and prejudice for the default. For cause, she contends that, when she filed her first postconviction petition in 2014, "the cases on which she based her claim had not been issued." [36] at 32. This presumably refers to *Montgomery*. But "the lack of precedent for a position differs from 'cause' for failing to make a legal argument." *United States v. Smith*, 241 F.3d

546, 548 (7th Cir. 2001). Regardless of whether the precedent exists, "a litigant must make the argument to preserve it for later consideration." *Id.* And the Supreme Court decided *Miller* in 2012, so Krol could have raised the same arguments she pursues now in her original postconviction petition. Thus, Krol cannot show cause for the procedural default.

Krol also fails to establish prejudice. Even if I could review the merits of her claim, I would find it unpersuasive. First, Krol is serving a 35-year sentence, not a life sentence. Nor is she serving a sentence "so long that, although set out as a term of years," it is "in reality a life sentence." *Kelly v. Brown*, 851 F.3d 686, 687 (7th Cir. 2017). She will be 56 when she is released.

Second, *Miller* applies to mandatory sentences for juvenile offenders. But "life sentences for murder are discretionary under Illinois law." *Croft v. Williams*, 773 F.3d 170, 171 (7th Cir. 2014). Here, while the sentencing court imposed a mandatory minimum sentence, it considered mitigating factors and exercised its discretion. The judge observed that Krol was an "unusual defendant," who had a high school degree and was taking college classes, working, and caring for her daughter. [31-4] at 207–08 (Exh. D, Sentencing Transcript). She sentenced Krol to 35 years—the minimum she could have received for first-degree murder with a firearm enhancement, 730 ILCS 5/5-4.5-20(a)—based on Krol's potential for rehabilitation. That Krol's sentence was discretionary, rather than mandatory, is a "critical difference from the situation presented in *Miller*." *Croft*, 773 F.3d at 171.

Since Krol cannot establish cause or prejudice, her Eighth Amendment claim is unreviewable. It also bears repeating that arguments raised for the first time in reply are forfeited, so Krol may not pursue her arguments using neuroscience to extend the jurisprudence of juvenile responsibility to young adults. [36] at 36–52.

## IV.  Conclusion

A certificate of appealability may issue if Krol has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To meet that standard for a claim decided on the merits, rather than on procedural grounds, Krol must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Almost all of the issues that Krol presents are defaulted, and that procedural disposition is not reasonably debatable. But a certificate of appealability should issue on Krol's sufficiency claim, limited to the question of the sufficiency of the evidence of Krol's intent. Reasonable jurists could debate whether it was objectively unreasonable for the state court to find that Krol knew that she was creating a substantial probability of death or great bodily harm to Rivera. A failure of proof beyond a reasonable doubt is a substantial showing of a deprivation of a constitutional right, and although I have concluded that the state court's decision fell within the bounds of permissible debate, its analytical weaknesses are such that whether its decision was reasonable is itself reasonably debatable.

The petition is denied. The Clerk shall enter judgment in favor of respondent. A certificate of appealability is issued on the *Jackson v. Virginia* claim as to proof of

Krol's intent. Any notice of appeal must be filed within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(1)(A).

ENTER:

Date: October 30, 2019

Manish S. Shah
U.S. District Judge